## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

**JASON BENOIT,**

        **Plaintiff,**                           **Case No.: 3:17-CV-00854-MMH-JBT**

**v.**

**CITY OF LAKE CITY, FLORIDA,**
**a Florida Municipal Corporation,**
**and GERALD L. FORD, Individually,**

        **Defendants.**

_____/

## DEFENDANT GERALD L. FORD'S
## DISPOSITIVE MOTION FOR SUMMARY JUDGMENT

Defendant Gerald L. Ford files this Motion for Summary Judgment seeking judgment as a matter of law on the claims asserted against him individually in Counts I and III of Plaintiff's Complaint.

## INTRODUCTION

On July 1, 2014, Mr. Ford, then a patrol officer with the City of Lake City Police Department, arrested Plaintiff based upon the sworn statement of Plaintiff's ex-girlfriend. Once it was discovered the ex-girlfriend gave a false statement to Mr. Ford, the State Attorney's office dismissed the criminal charges against Plaintiff, and charged the ex-girlfriend with filing a false police report, a charge to which she pled guilty. Plaintiff sued Mr. Ford and the City, claiming his arrest lacked probable cause, in violation of his Fourth Amendment rights and state tort law. As detailed below, Mr. Ford is entitled to summary judgment on the two counts of Plaintiff's three-count Complaint directed at him in his individual capacity.

## STATEMENT OF FACTS

While working as an assigned patrol officer on July 1, 2014, Mr. Ford received direction from dispatch to respond to a 911 domestic violence call initiated by Allison Melissa. [Ford Aff. at ¶¶ 2, 3; Ford Depo. at 9:12-15] Upon arrival at the directed location, Mr. Ford encountered Ms. Melissa, and observed she appeared scared and nervous. [Ford. Aff. at ¶¶ 4, 5] Ms. Melissa informed Mr. Ford of the following:

- Her ex-boyfriend was Plaintiff;

- Several weeks earlier, Ms. Melissa had obtained a domestic violence injunction, which, among other things, prohibited Plaintiff from contacting Ms. Melissa; and

- Plaintiff had attempted to call Ms. Melissa 23 times and sent her three emails as well as hacking her Facebook account in violation of the injunction.

[Ford Aff. at ¶ 3]

Ms. Melissa showed Mr. Ford the Final Judgment of Injunction for Protection Against Domestic Violence entered on May 27, 2014. [Ford Aff. at ¶10] In it, a Circuit Judge found Ms. Melissa was "a victim of domestic violence or has reasonable cause to believe that [she] is in imminent danger of becoming a victim of domestic violence by [Plaintiff]." [Ford Aff. at ¶10, Exhibit C] The judge specifically ordered Plaintiff to "have no contact with [Ms. Melissa]. [Plaintiff] shall not directly or indirectly contact [Ms. Melissa] in person, by mail, e-mail, fax, telephone, through another person, or in any other manner." [Ford Aff. at ¶10, Exhibit C]

Ms. Melissa also showed Mr. Ford the three emails she alleged were from Plaintiff, using a disguised email address. [Ford Aff. at ¶12] The first email, which Ms. Melissa purportedly received 24 hours before meeting Mr. Ford, read:

> Babe, I disguised my email so I won't get in trouble for contacting you. We need to talk. I love you babe. I got a smartphone, my number is 386-249-1448. Please, I don't want to fight. Please just talk to me. I love you.

[Kostelnik Dec., Exhibit  A at Bates COLC 000053] The second email, sent within 30 minutes of the first one, read, in pertinent part, "I don't want to hurt you! Just answer my calls. I am sorry! Just give me one last chance." [Kostelnik Dec., Exhibit A at Bates COLC 000051] The third email, sent a few hours before Mr. Ford's arrival, stated:

> Alison, you are not being fair with me. All I ask is for one chance to talk to you. Why won't you answer my phone calls Alison? You are really upsetting me. <u>I am willing to risk everything to come see you. I know I am on house arrest but I have to see you. I know once you see me everything will be Okay (sic)</u>. Please done make me do this! Answer my calls, I love you.

[Kostelnik Dec., Exhibit A at Bates COLC 000052] (emphasis supplied).

Ms. Melissa then showed Mr. Ford her phone, which appeared to show receiving 23 calls in a three-day period from the phone number listed in the first email, quoted above. [Ford Aff. at ¶¶6,7, Exhibit A]

In Mr. Ford's presence, Ms. Melissa handwrote a statement, which she certified to be true and correct, and which provided, in full:

> My ex, Jason Benoit, has a restraining order on him for my protection. In the last 3 days, I have received 23 phone calls from him, he hacked my facebook account, and emailed me from a disguised email account. I have ignored him, and he still continued calling me. This afternoon, I received the last email stating if I didn't answer the phone, he would come to my house. I am scared and don't want him anywhere near me, so I contacted the police. I know he will hurt me!

[Ford. Aff. at ¶9, Exhibit B; Ford Depo. at 109:4-6] Throughout his encounter with Ms. Melissa, Mr. Ford had no reason to believe that she was being anything but truthful with him. [Ford Aff. at ¶18] Plaintiff cannot legitimately comment on this issue. [Pltf. Depo. at 28: 4-17]

After speaking with Ms. Melissa and obtaining her statement, Mr. Ford relayed the information to his Sergeant, who granted him permission to arrest Plaintiff. [Ford Aff. at ¶14]

Mr. Ford determined Plaintiff was located outside the City's jurisdiction, and requested and received an escort from the Columbia County Sheriff's Office to effect Plaintiff's arrest, which occurred without incident or need for force. [Ford Aff. at ¶¶15-17] Later that night, Mr. Ford prepared a report detailing his encounter with Ms. Melissa and his arrest of Plaintiff. [Ford. Aff. at ¶6] The next day at Plaintiff's first appearance, the judge found probable cause for Plaintiff's arrest. [Pltf. Depo. at 33:14-34:7]

Plaintiff testified at deposition that during his arrest, he told Mr. Ford the allegations by Ms. Melissa were false. [Pltf. Depo. at 30:1-9] Plaintiff also testified Mr. Ford would not answer his questions about the number Plaintiff allegedly called or that which he allegedly used to make the calls [Pltf. Depo. at 30:13-16] Plaintiff called Mr. Ford a liar, and told him that he was wrong. [Pltf. Depo. at 30:18-21] Plaintiff asked Mr. Ford why he was arresting him, and told him that the arrest could send him back to prison. [Pltf. Depo. at 43:8-23] Plaintiff was unable to recall anything else he said to Officer Ford that night. [Pltf. Depo. at 31:1-32:10; 106:11-17; 173:1-8]

Investigator Ryan Nydam from the State Attorney's office had the ability to conduct a more in-depth investigation, which he initiated at the request of Plaintiff's then-current girlfriend. [Nydam Aff. at ¶¶3, 10] Plaintiff provided Investigator Nydam with his cell phone and laptop and log-in information. [Nydam Aff. at ¶4] Investigator Nydam took a couple weeks to subpoena Verizon's records of the phones of both Plaintiff and Ms. Melissa, and was unable to find any contact between Plaintiff and Ms. Melissa. [Nydam Aff. at ¶¶5, 6] Investigator Nydam and the Assistant State Attorney assigned to the case ultimately decided that there was not enough evidence to support charges beyond a reasonable doubt. [Nydam Aff. at ¶7] Allison Melissa was charged with and plead guilty to filing a false police report. [Nydam Aff. at ¶7]

4

Despite, the charges ultimately being dropped against Plaintiff, Investigator Nydam believes that probable cause existed to arrest Plaintiff. [Nydam Aff. at ¶11]

<u>**MEMORANDUM OF LAW**</u>

Plaintiff's Complaint asserts two causes of action against Mr. Ford. (Doc. 9.1) Count I asserts an action under 42 U.S.C. §1983 on the basis that the arrest violated Plaintiff's Fourth Amendment rights. Count III alleges an action under state tort law, pursuant to Section 768.28, Florida Statutes. As shown below, both claims are ripe for judgment in Mr. Ford's favor.

### A.  <u>Standard of Review</u>

This Court is well versed in the standard applicable to summary judgment and Mr. Ford will not rehash the standard here. Suffice it to say that the remedy is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Rule 56(c), Fed R. Civ. P. In the present case, summary judgment is appropriate as to Count I because there was probable cause to arrest Plaintiff, and even if there wasn't, there was arguable probable cause, entitling Mr. Ford to qualified immunity. Count III is also ripe for judgment as a matter of law because, in addition to the existence of probable cause, there is not one shred of evidence to support any inference that Mr. Ford acted outside the immunity afforded him under Section 768.28(9)(a), <u>Florida</u> <u>Statutes</u>.

### B.  <u>Probable Cause Existed at the Time of Plaintiff's Arrest</u>

Probable cause is a <u>complete defense</u> to claims of false arrest. <u>Ball v. City of Coral Gables</u>, 301 Fed. Appx. 865 (11th Cir. 2008); <u>Lee v. Geiger</u>, 419 So. 2d 717 (Fla. 1st DCA 1982)(emphasis supplied). The standard for determining whether probable cause exists is the same under Florida and federal law. <u>Rankin v. Evans</u>, 133 F.3d 1425, 1435 (11th Cir. 1998).

"Probable cause exists when the facts and circumstances, of which the officer has reasonably trustworthy information, would cause a prudent person to believe that the suspect has committed, is committing, or is about to commit an offense." Jordan v. Mosley, 487 F.3d 1350, 1355 (11th Cir. 2007). "No officer has a duty to prove every element of a crime before making an arrest. Police officers are not expected to be lawyers or prosecutors." Id. (citation and internal quotation marks omitted).

The United States Supreme Court recently issued its decision in District of Columbia v. Wesby, 138 S.Ct. 577 (2018), where it held:

> To determine whether an officer had probable cause for an arrest, "we examine the events leading up to the arrest, and then decide 'whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to' probable cause." Maryland v. Pringle, 540 U.S. 366, 371, 124 S.Ct. 795, 157 L.Ed.2d 769 (2003) (quoting Ornelas v. United States, 517 U.S. 690, 696, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996)). Because probable cause "deals with probabilities and depends on the totality of the circumstances," 540 U.S., at 371, 124 S.Ct. 795, it is "a fluid concept" that is "not readily, or even usefully, reduced to a neat set of legal rules," Illinois v. Gates, 462 U.S. 213, 232, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). It "requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." Id., at 243–244, n. 13, 103 S.Ct. 2317 (1983). Probable cause "is not a high bar." Kaley v. United States, 571 U.S. ——, ——, 134 S.Ct. 1090, 1103, 188 L.Ed.2d 46 (2014).

Wesby, 138 S.Ct. at 586.

Further, arresting officers are not required to sift through conflicting evidence or resolve issues of credibility to effectuate an arrest. Dahl v. Holley, 312 F.3d 1228, 1234 (11th Cir. 2002). Probable cause determinations do not require a fine resolution of conflicting evidence that a reasonable-doubt or a preponderance standard demand. Gerstein v. Pugh, 420 U.S. 103, 121 (1975). Probable cause does not require certainty on the part of police officers. Dahl, at 1234.

Here, Plaintiff was arrested for, among other things, violation of an injunction for protection against domestic violence. An individual willfully violates an injunction for protection against domestic violence by "telephoning, contacting, or otherwise communicating with the petitioner directly or indirectly." Section741.31(4)(a)(5), Florida Statutes.

In making his determination to arrest Plaintiff, Mr. Ford did not solely rely on Ms. Melissa's statements that Plaintiff contacted her both via telephone and through e-mail. Mr. Ford reviewed the e-mails, and the log of phone calls Ms. Melissa showed him purportedly from Plaintiff. Together with Ms. Melissa's demeanor, the Final Judgment of Injunction for Protection Against Domestic Violence issued only five weeks earlier by a neutral judge, and Ms. Melissa's sworn written statement, Mr. Ford had plenty of evidence to support a finding of probable cause for Plaintiff's arrest for violation of an injunction for protection against domestic violence.

Indeed, the information relied upon by an officer can come from either an eyewitness or the victim, so long as there is no evidence to suggest the individual supplying the information is an untrustworthy source. See City of Clearwater v. Williamson, 938 So. 2d 985 (Fla. 2d DCA 2006) (reasonable for officer to believe complainant/victim in that she actually witnessed the crime despite arrestee supplying an alibi to officer before the arrest was made when physical evidence did not prove complainant unworthy of belief); Downs v. State, 439 So. 2d 963, 965 (Fla. 1st DCA 1983) ("Once [the victim] identified [the perpetrator], Officer had probable cause to make an arrest."); Lawson v. City of Miami Beach, 908 F. Supp. 2d at 1290 (S.D. Fla. 2012) ("Police officers may generally rely on a victim's statement to establish probable cause absent allegations indicating that their reliance was unreasonable."); State v. Hester, 545 So. 2d 493, 494 (Fla. 3d DCA 1989) (Probable cause to arrest was established when the officers proceeded to the location provided by the victim and observed for themselves that the arrestee corresponded to

the very specific description given by the victim); <u>Miami-Dade County v. Asad</u>, 78 So. 3d 660, 674 (Fla. 3rd DCA 2012) ("[T]he receipt of information from someone who it seems reasonable to believe is telling the truth is adequate" to establish probable cause).

In addition, the judge who presided over Plaintiff's first appearance determined there was probable cause for Plaintiff's arrest. Perhaps most significantly, Plaintiff admitted that if what Ms. Melissa told Mr. Ford was true, there would be probable cause to arrest Plaintiff. (Doc. 9.1 at ¶11).

In <u>Taylor v. Taylor</u>, 649 Fed. Appx. 737 (11th Cir. May 3, 2016), the Eleventh Circuit held that an officer did not act unreasonably when he attempted to gain a warrant from a magistrate based on his belief that there was probable cause to arrest the plaintiff. <u>Id</u>. at 744. The deputy relied on the victim's statements that the plaintiff made harassing phone calls and corroborated those statements by viewing a call log with numerous calls from a restricted number. <u>Id</u>. at 739. When the deputy went to arrest the plaintiff, the plaintiff denied making the phone calls and attempted to show the deputy her phone to prove that she did not make the calls; however, the deputy refused to look at it. <u>Id.</u> at 740. The court noted that the deputy's refusal to view the phone was immaterial because at most it would have shown that the plaintiff did not make the calls from that phone. <u>Id</u>. at 745.

Notably, the judge who issued the warrant in <u>Taylor</u>, found that there was probable cause to arrest the plaintiff on less evidence than Mr. Ford relied on in the instant case. Here, Mr. Ford met with Ms. Melissa, whom he observed to be scared, because she had contacted law enforcement. Ms. Melissa provided Mr. Ford with a permanent injunction issued to, in part, prevent Plaintiff from contacting her. Ms. Melissa then told and showed Mr. Ford evidence which appeared to corroborate that Plaintiff emailed and called her repeatedly over a three-day

period. Ms. Melissa told Mr. Ford she was scared Plaintiff would come to her house and hurt her, and at least one of the emails she provided Mr. Ford substantiated her allegations. Additionally, Ms. Melissa handwrote a sworn written statement. Those facts, viewed objectively, are sufficient to establish probable cause that Plaintiff violated the injunction. Therefore, Counts I and III should be dismissed as a matter of law.

### C. Mr. Ford is Entitled to Qualified Immunity

Even if Plaintiff can somehow prove there was not actual probable cause to arrest him, the application of qualified immunity bars his claim in Count I alleging a Fourth Amendment claim. "Qualified immunity protects government officials performing discretionary functions from suits in their individual capacities unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known." Dalrymple v. Reno, 334 F.3d 991, 994 (11th Cir. 2003).

The doctrine protects "all but the plainly incompetent or one who is knowingly violating federal law." Vinyard v. Wilson, 311 F.3d 1340, 1346 (11th Cir. 2002)(quoting Lee v. Ferraro, 284 F.3d 1188, 1194 (11th Cir. 2002). The Eleventh Circuit has ruled that "only in exceptional cases will government actors have no shield against claims made against them in their individual capacities." Braddy v. Fla. Dep't of Labor & Emp. Sec., 133 F.3d 797, 801 (11th Cir. 1998)(quoting Lassiter v. Ala. A&M Univ., 28 F.3d 1146, 1149 (11th Cir. 1994)(en banc)).

In order to receive qualified immunity, a government official must prove he was "acting within his discretionary authority" at the time the alleged wrongful acts occurred. Cottone v. Jenne, 326 F.3d 1352, 1357 (11th Cir. 2003). Discretionary authority may be proven by establishing first, that he "was performing a legitimate job related function" and second, that he pursued the function "through means that were within his power to utilize." Holloman ex rel.

Holloman v. Harland, 370 F.3d 1252, 1265 (11th Cir. 2004). It cannot be disputed that Mr. Ford

was acting within his discretionary authority when he arrested Plaintiff.

Turning again to *Wesby*, as the Supreme Court recently reaffirmed:

> Under our precedents, officers are entitled to qualified immunity under § 1983 unless
> (1) they violated a federal statutory or constitutional right, and (2) the unlawfulness
> of their conduct was "clearly established at the time." Reichle v. Howards, 566 U.S.
> 658, 664, 132 S.Ct. 2088, 182 L.Ed.2d 985 (2012). "Clearly established" means that,
> at the time of the officer's conduct, the law was " 'sufficiently clear' that every
> 'reasonable official would understand that what he is doing' " is unlawful. al–Kidd,
> supra, at 741, 131 S.Ct. 2074 (quoting Anderson v. Creighton, 483 U.S. 635, 640,
> 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)). In other words, existing law must have
> placed the constitutionality of the officer's conduct "beyond debate." al–Kidd, supra,
> at 741, 131 S.Ct. 2074. This demanding standard protects "all but the plainly
> incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S.
> 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986).
>
> ***
>
> We have stressed that the "specificity" of the rule is "especially important in the
> Fourth Amendment context." Mullenix, supra, at 308. Probable cause "turn[s] on the
> assessment of probabilities in particular factual contexts" and cannot be "reduced to
> a neat set of legal rules." Gates, 462 U.S., at 232, 103 S.Ct. 2317. It is "incapable of
> precise definition or quantification into percentages." Pringle, 540 U.S., at 371, 124
> S.Ct. 795.

Wesby, 138 S.Ct. at 589-90. In line with this, the Court has held, "the protection of qualified

immunity applies regardless of whether the government official's error is a mistake of law, a

mistake of fact, or a mistake based on mixed questions of law and fact." Pearson v. Callahan,

555 U.S. 223, 231 (2009).

Mr. Ford is entitled to qualified immunity so long as there was "arguable probable cause"

for Plaintiff's arrest. See Gates v. Khokhar, 884 F.3d 1290, 1298 (11th Cir. 2018). Arguable

probable cause exists when reasonable officers in the same circumstance and possessing the

same knowledge as Mr. Ford *could have believed* that probable cause existed to arrest Plaintiff.

Id. (emphasis supplied). "In other words, qualified immunity still applies if the officer

reasonably, but mistakenly believed that probable cause was present." <u>Grider v. City of Auburn, Ala.</u>, 618 F.3d 1240, 1257 (11th Cir. 2010). Plaintiff is required to prove that no reasonable officer could have found probable cause under the totality of the circumstances. <u>Kingsland v. City of Miami</u>, 382 F.3d 1220, 1232 (11th Cir. 2004). For the reasons stated above, it is apparent that Mr. Ford had, at a minimum, arguable probable cause to arrest Plaintiff.

Although given repeated opportunities at his deposition, Plaintiff could not recall providing Mr. Ford with any objective evidence of his innocence. Notwithstanding this, Mr. Ford anticipates Plaintiff will attempt to rely on <u>Kingsland</u> and its progeny for the proposition that Mr. Ford did not conduct a reasonable investigation, precluding summary judgment. Initially, it is imperative to recognize that <u>Kingsland</u> was a unique and exceptional case where investigating officers may have been biased because they were responding to call made by a fellow officer for an accident involving that officer. <u>Id.</u> at 1228 n. 9. Further, the plaintiff in <u>Kingsland</u> alleged that the officers fabricated evidence and supported that allegation with a host of facts and circumstances that questioned the validity of the investigation. <u>Trujillo v. Florida Agency for Health Care Admin.</u> 405 Fed. Appx. 461, 464 (11th Cir. 2010); <u>Kingsland</u>, 382 F.3d at 1224.

The facts of this case are markedly different than those in <u>Kingsland</u>, making that decision inapposite. <u>See also Moreshead v. Ott</u>, 2009 WL 5083425 at *6-7, (S.D. Fla. Dec. 23, 2009)(providing a summary of cases distinguishing <u>Kingsland</u>). Here, there is no evidence that Mr. Ford was biased in his determination of probable cause, that he fabricated evidence, or that he conducted an unreasonable investigation into Ms. Melissa's allegations. Further, Mr. Ford did not rely solely on Ms. Melissa's statements, but rather, like <u>Taylor</u>, reviewed apparent evidence that appeared to corroborate her allegations. In all, Mr. Ford had evidence of a recent history of domestic abuse by Plaintiff, Ms. Melissa appeared fearful of imminent harm, to the extent she

handwrote and signed a sworn written statement. Taylor, in essence, forecloses any argument advanced by Plaintiff that Mr. Ford should have reviewed his phone on the date of his arrest, as this would have only shown that Plaintiff either did not use that phone, or had the ability to erase his call history. See generally, Taylor, 649 Fed. Appx. at 745. Even the court in Kingsland, recognized that officers are only required to view and consider exculpatory evidence *immediately* available to them. 382 F.3d at 1229, n. 10. (emphasis supplied). As noted above, it Investigator Nydam ten days to receive phone records from Verizon in response to a subpoena.

Further, it is not incumbent on arresting officers to eliminate every theoretically plausible claim of innocence or to sift through conflicting evidence or resolve issues of credibility before making an arrest, so long as the circumstances present a sufficient basis for believing that an offense has been committed. See Kingsland, 382 F.3d at 1229; Taylor, 649 Fed. Appx. at 745. Also, even if there are inconsistencies in the victim's and the arrestee's stories, officers are not required to investigate every inconsistency before making an arrest. See Mills v. Town of Davie, 48 F. Supp. 2d 1378, 1382 (S.D. Fla. 1999). "[C]ourts should be wary of scrutinizing the circumstances of an arrest through 20/20 hindsight that comes after charges are dropped or the suspect is acquitted." Hendricks v. Rambosk, 2012 WL 12950404 at *5 (M.D. Fla. Jan. 31, 2012)(quoting Mills, 48 F. Supp. 2d at 1380).

In his Complaint, Plaintiff alleges Mr. Ford could not have conducted a reasonable investigation because he was under the influence of cocaine and marijuana on the night of Plaintiff's arrest. (Doc 9.1 at ¶¶ 15-17) Plaintiff and his counsel took great liberty with this baseless and irresponsible allegation, deliberately smearing Mr. Ford in the media[1] and on Facebook[2]. Without any evidence[3] to back it up, this false allegation and the publicity Plaintiff

---

[1] https://www.firstcoastnews.com/article/news/coke-using-cop-jails-man-on-phony-stalking-charge/77-442620808
[2] Plaintiff's Counsel's May 3, 2017 Facebook post.

12

generated around it can properly be labeled "#FakeNews," and discarded by this Court as it analyzes whether Mr. Ford is entitled to judgment as a matter of law.

**D.  Mr. Ford is Entitled to Immunity on Plaintiff's State False Arrest/ False Imprisonment Claim.**

Although, Plaintiff's state law claim for false arrest is barred by the existence of probable cause, Mr. Ford is additionally immune from liability pursuant to Section 768.28(9)(a), Florida Statutes, which protects government employees for actions taken within the course and scope of their employment:

> No officer, employee, or agent of the state or of any of its subdivisions shall be held personally liable in tort or named as a party defendant in any action for any injury or damage suffered as a result of any act, event, or omission of action in the scope of her or his employment or function, unless such officer, employee, or agent acted in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property.

§ 768.28, Fla. Stat. As the Florida Supreme Court has explained:

> If a State officer, employee, or agent acts within the scope of employment and does not act in bad faith, with malicious purpose, or in a manner exhibiting wanton and willful disregard, the plaintiff's exclusive recourse is to seek damages from the governmental entity or the head of such entity in his or her official capacity. Conversely, if the employee's act falls outside of this area (*i.e.,* the act was outside the scope of employment or committed in bad faith, with malicious purpose, or in a manner exhibiting wanton and willful disregard), the plaintiff can recover only from the employee, not from the State.

Keck v. Eminisor, 104 So. 3d 359, 366 (Fla. 2012).

"Bad faith" under § 768.28(9)(a) has been equated with "actual malice," which means possessing an "evil intent or motive." Olson v. Johnson, 961 So. 2d 356, 359 (Fla. 2d DCA 2007); Drudge v. City of Kissimmee, 581 F. Supp. 2d 1176, 1195 (M.D. Fla. 2008); Parker v. Fla. Bd. of Regents, 724 So. 2d 163, 167 (Fla. 1st DCA 1998). In addition, "the phrase 'wanton

---

[3] See Benoit Depo. at 34:12-36:1.

and willful disregard' connotes conduct much more reprehensible and unacceptable than mere intentional conduct." Richardson v. City of Pompano Beach, 511 So. 2d 1121, 1123 (Fla. 4th DCA 1987).

Mr. Ford was acting within the course and scope of his employment when he arrested Plaintiff. Plaintiff has put forth no evidence that when he effected the arrest, Mr. Ford was acting in bad faith, with malicious purpose, or that he exhibited wanton and willful disregard of human rights, safety, and property. Simply put, Mr. Ford, while on duty as a police officer, responded to a 911 call relating to domestic violence. Mr. Ford encountered a scared woman who provided him with testimony, corroborated by documentary evidence, and a sworn written statement that Plaintiff violated a domestic violence injunction put in place by a neutral judge by calling and e-mailing her. That, in and of itself, provides probable cause, and obliterates any of Plaintiff's unsubstantiated allegations that Mr. Ford acted in a manner that deprived him of the statutory immunity set forth in Section 768.28. As such, summary judgment is warranted as to Count III.

## CONCLUSION

Probable cause existed for Plaintiff's arrest on July 1, 2014. Specifically, Ms. Melissa provided Mr. Ford with a sworn statement, corroborated by what appeared to be objective evidence supporting her allegations that Plaintiff violated the no contact provision of the injunction she obtained against him. Even, if there was not probable cause to arrest Plaintiff, Mr. Ford is entitled to immunity on both Counts I & III. Accordingly, Plaintiff's allegations of false arrest under state and federal law are without merit, and ripe for dismissal. For those reasons, this Court should grant the instant motion and enter judgment in Mr. Ford's favor as to Counts I & III.

WHEREFORE, Defendant, **GERALD L. FORD**, respectfully request this Honorable Court to grant the instant motion and enter judgment in Mr. Ford's favor as to Counts I & III, and to grant such other relief as this Court deems just and proper.

Dated this 21st day of May, 2018

Respectfully submitted,

/s/Michael P. Spellman
**MICHAEL P. SPELLMAN**
Florida Bar No.: 0937975
mspellman@sniffenlaw.com
/s/ Kevin C. Kostelnik
**KEVIN C. KOSTELNIK**
Florida Bar No.: 0118763
kkostelnik@sniffenlaw.com

**SNIFFEN & SPELLMAN, P.A.**
123 North Monroe Street
Tallahassee, Florida 32301
Telephone: (850) 205-1996
Facsimile: (850) 205-3004

*Attorneys for Gerald L. Ford*

## CERTIFICATE OF SERVICE

The undersigned certifies that on this 21st day of May, 2018, a true and correct copy of the foregoing was electronically filed in the US District Court, Middle District of Florida, using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

*/s/ Michael P. Spellman*
**MICHAEL P. SPELLMAN**

15